# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| GRACE CATHERINE DIXON, | ) | CASE NO. 5:22-CV-02105-CAB |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Grace Catherine Dixon ("Dixon" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On November 5, 2019, Claimant filed an application for SSI, alleging a disability onset date of November 5, 2019. (ECF No. 7, PageID #: 53). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On September 16, 2021, an ALJ held a video hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On October 18, 2021, the ALJ issued a written decision finding Claimant was not disabled. (*Id.*). The ALJ's decision

1

became final on September 22, 2022, when the Appeals Council declined further review. (*Id.* at PageID #: 27-30).

On November 21, 2022, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 9, 11). Claimant asserts the following assignments of error:

> (1) The ALJ committed harmful error when he failed to find that Dixon satisfied the criteria of Listings 12.04, 12.06, 12.10, and/or 12.11 at Step Three of the Sequential Evaluation.
>
> (2) The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Dixon's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.
>
> (3) The ALJ committed harmful error when he modified the definition of superficial interaction.

(ECF No. 9 at 1).

## III. Background

### A. Relevant Allegations

The ALJ summarized Claimant's disability allegations:

> The claimant alleged that she was disabled due to a variety of conditions, including autism and attention deficit hyperactivity disorder (lE/2). She stated that her impairment forced her to stop working (lE/2). She reported distractibility and forgetfulness (6E/1). The claimant described having poor ability to handle stress (6E/4). She further claimed that she had difficulty concentrating, following instructions, and completing tasks (7E/2). The claimant noted that she also had hallucinations and she wore diapers during the day because she forgot to use the restroom (Testimony). She testified that she had low back pain and problems carrying objects (Testimony).

(ECF No. 7, PageID #: 59).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> The record reflects that the claimant had a history of several conditions predating

the application date in November 2019, including anxiety, attention deficit hyperactivity disorder, and depression (8F). She received several accommodations while in school, including preferential seating, small groups, and extended time on tests (lF). In the summer of 2019, the claimant attended mental health counseling, where she reported having poor attention, panic attacks in crowds, and being depressed (8F). Nevertheless, she displayed generally normal appearance, speech, memory, attention, and thought processes (8F).

In a November mental health evaluation, the claimant reported anxiety, depression, hallucinations, attention deficit, and poor sleep (2F/1). She displayed rapid speech but euthymic mood, cooperative behavior, logical thoughts, intact cognition, and fair judgment and insight (2F/4, 5). The following month, the claimant noted a recent autism diagnosis (2F/8). She complained of variable depression, poor motivation, loss of interest, and social isolation (2F/9). She had rapid and circumstantial speech and thoughts, poor judgment and insight, impaired focus, and mild anxiety (2F/9, 10). However, the claimant had normal memory and adequate grooming (2F/10).

The claimant had a March 2020 mental health exam, where she said she had been feeling relatively well (2F/14). Although she had racing and loose thoughts with auditory hallucinations, she exhibited fair judgment and insight, good attention, only mild depression, no anxiety, and average activity (2F/15). Three months later, the claimant said she liked the medication she was taking and she was trying to obtain disability benefits (2F/22). She had poor insight but fair judgment (2F/22). She displayed only mild anxiety and depression with intact memory, good attention, logical thoughts, and clear speech (2F/22).

In August, the claimant said she had been doing "fine" and she denied depression, anger, paranoia, and visual hallucinations, although she noted ongoing anxiety and auditory hallucinations (2F/28). She had good sleep and normal appetite (2F/28). While she had rapid speech, racing thoughts, and loose associations, she exhibited fair judgment and insight, normal memory, good concentration, euthymic mood, and mild anxiety (2F/29).

The following month, the claimant requested a disability letter from her primary care provider (3F/1). She also requested a letter for a support animal and prescriptions for protein bars and nutritional supplements (3F/1). She became angry when told that insurance did not cover supplements (3F/ 1). She interrupted the conversation, she was angry, and she had repetitive tics (3F/3). She was agitated and aggressive with inattention and impulsive judgment (3F/3).

During an October counseling session, the claimant said she had variable mood, racing thoughts, auditory hallucinations, and paranoia (4F/10). Although she had rapid speech and racing thoughts, she demonstrated intact memory, good attention, fair insight and judgment, and good grooming (4F/10, 11).

> The claimant had a February 2021 mental health follow-up, in which she stated that she felt anxious with racing thoughts, but her mood was generally stable (5F/6). She heard music all the time and she had some trouble sleeping (5F/6). On exam, she had rapid speech and racing thoughts (5F/6). However, the claimant displayed fair judgment and insight, good attention, normal memory, mild anxiety, and euthymic mood (5F/7).
>
> In April, the claimant requested letters about her diagnoses for her attorney (6F/1). The claimant said she could not hold a job for more than a month due to confusion, distractibility, and anxiety around others (6F/1). She also said she had knee instability and she inquired about an ambulatory aid (6F/1). On exam, the claimant had normal knee function and strength (6F/3). She demonstrated rapid and pressured speech with hyperactive behavior, but normal attention, mood, thought content, and judgment (6F/3).
>
> Two months later, the claimant described having visual and auditory hallucinations and trouble sleeping (5F/13). She had circumstantial and racing but logical thoughts (5F/13). She exhibited normal thought content, fair judgment and insight, intact cognition, and only mild depression and anxiety (5F/13, 14). In July and she was on leash related to an elopement (7F/2). She reported poor attention and command hallucinations (7F/3). Her exam findings were relatively stable (7F/3, 4).
>
> . . .
>
> State Agency psychological consultants found that the claimant had moderate limitations in concentration, persistence, or maintaining pace along with adapting or managing oneself (2A; 4A). The consultants asserted that the claimant could understand and remember instructions for several simple tasks (2A; 4A). The consultants said that the claimant would have some difficulty dealing with work stressors but she could adapt to settings where duties were relatively static and changes were infrequent and could be adjusted to over time (2A; 4A). The consultants concluded that the claimant could sustain simple tasks without fast pace (2A; 4A).

(ECF No. 7, PageID #: 59-61).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since November 5, 2019, the application date (20 CFR 416.971 et seq.).

4

2. The claimant has the following severe impairments: anxiety, depression, learning disorder, borderline intellectual functioning, attention deficit hyperactivity disorder, and autism spectrum disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine tasks. The work environment must be free of fast-paced production requirements and involve only routine workplace changes. She can have no public contact and occasional interaction with coworkers. The claimant is limited to superficial contact with others, defined as no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 28, 1999 and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 5, 2019, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 7 at PageID #: 55-56, 58, 61-62).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient

6

evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal. First, she argues the ALJ committed harmful error by failing to find she satisfied the criteria of Listings 12.04, 12.06, 12.10, and/or 12.11. (ECF No. 9 at 1). Next, she argues the ALJ failed to properly apply the criteria of Social Security Ruling ("SSR") 16-3p. (*Id.*). Finally, she argues the ALJ committed harmful error by modifying the definition of superficial interaction. (*Id.*).

**1. The ALJ did not err in finding Claimant failed to meet a listing.**

Claimant argues that the ALJ erred in failing to find that she satisfied the criteria of Listings 12.04, 12.06, 12.10, and/or 12.11. To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that her impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

The relevant listings address depressive, bipolar, and related disorders (12.04); anxiety

and obsessive-compulsive disorders (12.,06); autism spectrum disorders (12.10); and neurodevelopmental disorders (12.11). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(1). Listings 12.04 and 12.06 "have three paragraphs, designated A, B, and C" and a claimant's mental disorder "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C" while Listings 12.10 and 12.11 "have two paragraphs, designated A and B" and a claimant's mental disorder "must satisfy the requirements of both paragraphs A and B." *Id.* at § 12.00(A)(2).

The ALJ's decision did not specifically discuss paragraph A so the parties' arguments focus on whether Claimant satisfies the criteria of either paragraph B or C.

### a. Paragraph B

To meet the paragraph B criteria of all the relevant listings, a claimant must show either an extreme limitation of one, or marked limitation of two, of the following areas of her mental functioning ability: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* at §§ 12.04, 12.06, 12.10, 12.11. A marked limitation exists when the claimant's ability to function independently, appropriately, effectively, and on a sustained basis is "seriously limited" whereas a moderate limitation exists when the claimant's ability is "fair." *Id.* at § 12.00(F)(2)(c)-(d).

The ALJ set forth his findings with respect to the Paragraph B criteria, citing to Claimant's September 2020 function report:

> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant asserted that she had trouble following instructions and completing tasks (7E/2). However, she demonstrated intact cognition at the balance of her exams. She had adequate ability to understand and apply information to pay her bills as well (7E/3). She was able to understand and follow medical advice generally.
>
> In interacting with others, the claimant has a moderate limitation. The claimant said that she was anxious around others. However, she went to stores and church without

8

> substantial difficulty (7E/1). Moreover, she maintained a relationship with her significant other during the relevant period. Additionally, she displayed generally appropriate behavior at exams.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant said she had poor concentration and ability to complete tasks (7E/2). Nevertheless, she had good attention and intact memory at the balance of her exams. She was able to pay her bills, an activity that can require heightened levels of attention (7E/3). Finally, the claimant was able to understand the proceedings at the hearing and answer questions appropriately.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant appeared to live relatively independently, and she did not demonstrate any ongoing problems with grooming or hygiene. She provided care for pets (6E/2). She also engaged in a variety of household chores, including cleaning, cooking, and doing laundry (7E/4).

(ECF No. 7, PageID #: 56).

Claimant argues that the ALJ "misquoted Dixon's statement" and "erroneously relied on the fact that Dixon had checked off that she could pay her bills, but she wrote that she was never taught how to use money orders or checks." (ECF No. 9 at 9-10). The Commissioner argues that the ALJ's conclusion was consistent with the opinions of the state agency psychological consultants who "found Plaintiff even less limited than the ALJ did, with only mild limitations in interacting with others and understanding, remembering, or applying information" and while Claimant summarized her subjective complaints and cites to medical records, "she fails to demonstrate that the ALJ's assessment was unreasonable." (ECF No. 11 at 7).

The Court agrees with the Commissioner. In reaching his conclusion, the ALJ relied on Claimant's own indications that she paid her bills, went to stores and church, provided care for pets, and performed certain household chores. (ECF No. 7, PageID #: 56). He also cited observations of Claimant's behavior at her exams, documented in detail later in the decision. (*Id.*); *see Forrest*, 591 F. App'x at 366 (affirming ALJ's "sparse step-three analysis" where he "made sufficient factual findings elsewhere in his decision to support his conclusion at step

9

three"). While Claimant argues the ALJ's reliance on her ability to pay bills was erroneous because of her indication that she was never taught how to use money orders or checks, the Court notes that in a digital age, paying bills may not require the use of checks or money orders such that these two statements are not inherently inconsistent. Thus, because substantial evidence supports the ALJ's conclusion that Claimant did not satisfy the paragraph B criteria, the Court will not disrupt his decision. *Nash*, 2020 WL 6882255, at *4 ("Even if the record could support an opposite conclusion, we defer to the ALJ's findings because it is supported by substantial evidence, based on the record as a whole.").

### b. Paragraph C

To meet the paragraph C criteria of both Listing 12.04 and 12.06, the claimant must have "a medically documented history of the existence of the disorder [in the listing] over a period of at least 2 years" and there must be evidence of both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" and "[m]arginal adjustment, that is, [the claimant] ha[s] minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life." *Id.* at §§ 12.04(C), 12.06(C).

The AJ concluded:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant had ongoing mental health treatment, but she did not have a highly structured environment. Moreover, the record did not establish that she had only marginal adjustment. Indeed, she was able to adapt to moving just prior to the alleged onset date (2F/5).

(ECF No. 7, PageID #: 57).

Claimant argues that the evidence in the record establishes that she satisfied the paragraph C criteria and the ALJ's reliance on her move from Georgia—"a place she indicated

that she did not like"—to find otherwise was error. (ECF No. 9 at 11). The Commissioner argues there was substantial evidence—including Claimant's ability to pay bills, shop in stores, attend church, and perform certain household chores in addition to the move from Georgia—to support the ALJ's decision that she did not meet the paragraph C criteria. (ECF No. 11 at 9).

The Court concludes that the ALJ's decision as to paragraph C criteria is supported by substantial evidence. Even if Claimant received the requisite medical treatment, she was still required to show that she had minimal capacity to adapt to changes in her environment. Claimant testified that she felt it was a "good decision" to leave her family to move to Ohio and that her mother later told her she was glad Claimant moved so she would get "to explore instead of just staying in one place." (ECF No. 7, PageID #:82-83). As cited by the ALJ, Claimant's ability to move across the country without her family supports that she possesses more than a minimal capacity to adapt to environmental changes.

Because the ALJ's conclusion that Claimant did not satisfy either the paragraph B or C criteria is supported by substantial evidence, he did not err in concluding Claimant failed to meet Listings 12.04, 12.06, 12.10, or 12.11. While Claimant argues the ALJ failed to consider all of the evidence, the ALJ's decision cited to much of the same evidence Claimant relies on and concluded that, as a whole, the record did not support a finding that Claimant's limitations were as severe as she described. (ECF No. 7, PageID #: 59-61). Claimant's argument amounts to a request to reweigh the evidence in her favor, which the Court does not do when reviewing an ALJ's decision. *McQuade v. Comm'r of Soc. Sec.*, No. 1:21CV834, 2022 WL 4375984, at *2 (N.D. Ohio Sept. 22, 2022). Rather, the Court must defer to the ALJ's decision "even if there is substantial evidence that would have supported an opposite conclusion[.]'" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### 2. The ALJ properly applied SSR 16-3p.

Claimant next argues the ALJ "failed to articulate any supportable rationale for his finding that Dixon's statements and the evidence . . . were not supportive of the fact that she would be precluded from all types of work" and the decision "failed to contain specific reasons for the finding on credibility, was not supported by the evidence in the case record and was not sufficiently specific to make clear to the individual and to any subsequent reviews the weight the ALJ gave to Dixon and/or the remainder of the evidence." (ECF No. 9 at 16-17). The Commissioner argues that "the decision reflects an adequate assessment of Plaintiff's subjective symptom complaints" because the "ALJ discussed Plaintiff's course of care and mentioned Plaintiff's satisfaction with her medications" and "pointed to the objective mental status findings contained in the record." (ECF No. 11 at 10).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8.

12

The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *11; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ found as follows:

> With respect to the claimant's alleged symptoms and limitations, I find such assertions only partially consistent with the evidence. She had ongoing mental health symptoms, including hallucinations with periodically circumstantial thoughts and rapid speech. However, the record failed to document the extreme memory limitations she described, including forgetting to use the restroom. Rather, the treatment notes showed generally intact memory, along with good attention, fair judgment and insight, and adequate grooming. Such facts suggest that she could perform simple tasks in the relatively static and socially limited environment of the residual functional capacity.

(ECF No. 7, PageID #: 61).

In reviewing the record, the ALJ noted instances where Claimant reported feeling well and liking the medication she was on and where she "had normal memory and adequate grooming" as well as fair insight and judgment. (*Id.* at PageID #: 59-60). Elsewhere in the decision, the ALJ discussed Claimant's daily activities, including household chores, paying bills, caring for pets, and attending church. (*Id.* at PageID #: 56). Additionally, the ALJ relied on the opinions of the state agency psychologists as to Claimant's limitations. The Court is satisfied that the ALJ considered the relevant evidence in accordance with SSR 16-3p and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. As the Court will not reweigh the evidence when reviewing an ALJ's decision, no compelling reason exists for the Court to disturb the ALJ's credibility finding. *Cross*, 373 F. Supp. 2d at 732; *McQuade*, 2022 WL 4375984, at *2.

### 3. The ALJ did not err in defining superficial interaction.

Claimant finally argues that the ALJ erred in defining superficial interaction as "no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others." (ECF No. 9 at 17). In response, the Commissioner first argues that "'superficial contact' or 'superficial interaction' are not defined terms in the Social Security Act or agency regulation" and "other courts have affirmed the same or similar formulations as the one here." (ECF No. 10 at 11). The Commissioner also argues that because the ALJ defined "superficial contact" the same way when questioning the vocational expert and Claimant's attorney failed to object, this argument is waived. (*Id.* at 12).

The Court agrees with the Commissioner that Claimant has waived this argument. "The Sixth Circuit, along with other courts across the country, have generally recognized that a

14

claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Robinson v. Comm'r of Soc. Sec.*, No. 1:15-cv-509, 2016 WL 3085762, at *9 (W.D. Mich. June 2, 2016) (collecting cases). At the hearing, the ALJ presented the vocational expert with a hypothetical using language identical to that ultimately adopted in the RFC, specifying that "contact with others would be superficial – meaning they could do no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others, or being responsible for the safety or welfare of others." (ECF No. 7, PageID #: 97-98). Claimant's counsel did not object or further question the vocational expert regarding limitations in social interactions. (*Id.* at PageID #: 97). Thus, Claimant has waived any objection. *See Robinson*, 2016 WL 3085762 at *9 ("Plaintiff's objections were not preserved at the administrative level. The ALJ asked Plaintiff's counsel whether he had any questions for the VE, and counsel responded he did not.").

Even if not waived, the Court finds this argument to be without merit. Claimant argues the ALJ "erroneously expanded the definition of superficial." (ECF. No. 9 at 18). However, "[t]he term 'superficial interaction' is not defined under the Dictionary of Occupational Titles ('DOT') or Selected Characteristics of Occupations ('SCO'). And there have been contrary findings as to whether the 'plain meaning' of the term requires further definition." *Betz v. Comm'r of Soc. Sec.*, No. 3:21-cv-2408, 2022 WL 17717496, at *10 (N.D. Ohio Nov. 8, 2022) (citations omitted) (collecting cases). As courts have found the phrase ambiguous and interpreted it differently, the Court does not believe the ALJ erred by listing how he specifically defined superficial. *See id.* ("Although the ALJ must connect the RFC limitations to the evidence and build a logical bridge between the two, this does not require that the ALJ provide explicit reasoning for why he defined superficial the way he did. Rather, the ALJ needed to

15

explain why he determined that Betz was limited to superficial contact *as he defined it*, and it is sufficient that the record not be clearly contrary to that definition.").

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: 9/20/2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).